Good morning, Your Honor. Stephen Demmer, can you hear me? Yes. Yes, I found you on my participant list. Thank you. Thank you, Your Honor. Please proceed. Thank you, Your Honor. May it please the Court and Counsel. Your Honors, this was a somewhat unique and unusual case in that Mr. Janis' substance of guilt was not contested. What was contested, both at the trial and at sentencing, was the quantity of methamphetamine that was being attributed to him as part of the conspiracy for which he was convicted. With the Court's permission, I'd like to proceed with the arguments in order, beginning with the Rule 35 sua sponte instruction that was given by the District Court. This happened at the end of the third day of trial, in a four-day trial, where the District Court gave the jury an instruction regarding cooperation. Now, the defense theory and the reason why this is being argued on a plain-error standard is because the defense theory was quite simple. The defense theory was that the cooperating witnesses had a motivation and a bias to aggravate or embellish the quantities agreement with the government. The problem with the Court's sua sponte instruction is that cooperation is based on a substantial assistance standard, which is a question of degrees of cooperation. It's entirely feasible that a cooperating witness could come into the government and give them information on a low-level drug dealer, perhaps one or two grams of methamphetamine, and that cooperation would not be deemed substantial, and therefore they would not get the benefit for that cooperation. When the District Court instructed the jury on Rule 35, it became less a matter of degree and more of a light-switch type of analysis with regards to cooperation. And this was not an insignificant issue at the trial, because 96% of the weight of methamphetamine that was being attributed to Mr. Genese, and there I'm just talking about the 500-gram threshold for the conviction, 96% of that weight was based solely on cooperator testimony. The only actual amount of methamphetamine that was seized by the government and weighed in this case was approximately 19 grams of methamphetamine. Counsel, do you think that maybe when the District Court got into the discussion about, I think he said something like, as a regular matter with full cooperation, a 50% cut, I almost wondered if that helped the defense in the sense that the jury now had in its mind that, wow, getting up here, they get a full half off of their sentence, and that further diminished their credibility. Well, Your Honor, I don't agree with that respectfully, because what the District Court said immediately after that 50% cut, and I'm quoting from the sua sponte instruction, was there's absolutely no assurance of that. You know, the District Court came in and said that this sua sponte instruction was to clarify a matter, but if in fact, if you read the wording of the instruction, it didn't clarify anything. It said that the sentencing was a wide, broad discretion for the District Court, and as Your Honor just noted, he mentioned 50%, but then immediately said there's no assurance of that. That, in the appellant's mind, left confusion with the jury and gave them the impression that this cooperation was based on pleasing the judge rather than pleasing the prosecutor, and that's a significant problem because the jury had a motivation to please the prosecutor by giving them substantial assistance, not the judge. I thought they'd already been sentenced. Yes, Your Honor, but they had not received their Rule 35 motions. But they had no reason to please the judge. Well, Your Honor, my argument is based on that instruction that the District Court gave. It very clearly gave the impression that the witnesses had a motivation to please the judge because the judge was telling the jury that he would make the decision on what the sentence cut would be, if that makes sense, Your Honor. I have a question just about how the Rule 35s work in your district. Is it your experience that the government never recommends a certain amount of a reduction on a Rule 35 motion? Well, Your Honor, that's not my experience, and I believe the District Court actually described the Rule 35 as a mysterious process that everyone except prosecutors and judges, so perhaps the government would be better to answer that question. But I will answer from my anecdotal experience, which is that a Rule 35 motion is made within one year of sentencing, and then it's sort of a process between the prosecutor and the judge where defense counsel is allowed an opportunity to comment. But the actual recommendation by the government, I don't know if that varies or not, Your Honor. I will say, Your Honor, that my anecdotal experience, and I think what was being argued at trial, was that the subjective motivation of these witnesses was the only issue at trial, and their subjective motivation was to cooperate in a substantial manner. Because if you don't cooperate with them in a substantial manner, then you don't get the benefit of a Rule 35, or in plea negotiations, the government does not consider your cooperation substantial. This was the whole theory of defense, was that the cooperating witnesses who, again, composed 96 percent of the weight in this case. And I understand the defense, so what would the proper instruction be? Maybe your answer will be no instruction, but to the extent that the court thought there needed to be some clarification and understanding by the jury what actually is going on, because it is actually a very complicated issue. I mean, what you've talked about sort of sounds, you know, overarchingly straightforward, oh, it has to be substantial, but you're talking about quantities that increase sentences that the jury doesn't necessarily get into. So, I mean, it is a complicated matter. And so what would your view be of the proper explanation to the jury from the judge on how this works? Your Honor, I think that's a very good question. My answer to that was, the government argues in its brief that there was a confusion that was caused somehow by the defense's cross-examination, and therefore the district court necessarily needed to intervene. My answer, Your Honor, would be Eighth Circuit Model Criminal Instruction 4.05a. If the court felt the need to jump in, it should have given that model instruction. And the reason why that's important, Your Honor, is because if you read that model criminal instruction, it squarely puts it in the jury's discretion and the jury's determination. It says whether or not the cooperating witness's testimony may have been influenced by his desire to please the government or strike a good bargain with the government about his own situation is for you to decide. Now, if you take that language and that wording and you compare it with the instruction that the court gave, it is full of the pronoun me at the court, the judge. It says it's entirely up to the judge. That's a quote from the district court's instruction. And so the court also said, so there's a very wide range of discretion as to what the cut would be, if any. The problem is, Your Honor, the model criminal instruction squarely puts it in the jury's province and the district court's sui sponte instruction, which was not a model instruction, put it in the court's lap. And that would be my answer to that question. Your Honor, I believe if the court were to give an instruction, it should have been the model criminal instruction. Counsel, can I ask you this? This very simple point? Yes, Your Honor. As I understand all the colloquy ends with defense counsel saying, okay, fair enough. Is this a waiver case? I know you started with plain error, but is this actually a waiver case when you say, okay, fair enough, Your Honor, there there is that wording and I believe it's still plain error because what the defense was stating at the sidebar was that his experience was different, that it was the subjective motivation of the witnesses. Um, so I don't think it's a waiver, Your Honor. I think it's I concede that it's plain error and there must be a plain error that affected the substantial rights of the defendant. But my argument is because this case was limited to this wish, which is quantity, that is what puts it in plain error. There was no other defense. There was no defense to the prohibited person in possession of a firearm. And in opening statement as the brief states, it was conceded that Mr. Janice had engaged in methamphetamine dealing. What was contested was the amount. And that's why I believe it's plain error and not waiver. Your Honor. Thank you. Council. This is a probably probably a dumb question. But if the preponderance finding of quantity at sentencing was correct, why does this issue matter? That's a good question, Your Honor. Um, the argument at sentencing is that the court took an apple standard and an orange standard and and referred back to the apple standard of sentencing. If I may explain, the standard for trial is different. I wasn't asking for it for your second argument is is plain error and increasing a drug quantity without adequate findings. But if you lose that argument, my question is, why does this? Why does this instruction? What? What's the significance of this instruction? 35 issue, Your Honor? Because I think it affected the entire trial. I think it tipped the balance in favor of the prosecution, and therefore it would be an issue of asking the court to remand for a new trial, a new trial on the on the issue you conceded. No, Your Honor. On the issue of quantity, guilt that was conceded. No, Your Honor. Again, the guilt was conceded. It's the quantity that was disputed, Your Honor. So why? Why does the quantity matter? If if if I mean, I understand that the additional element in 9 24 and so forth, but why does it matter if if the guilt was conceded and the quantity for sentencing purposes was sustained by a preponderance standard? I don't. I I understand the theoretical argument, but what's what's the practical argument? That's a good question. Under the practical argument is that the 500 gram threshold increased Mr Denise's mandatory minimum from five years to 10 years. And what was this? What was his sentence? His sentence was 15 years, Your Honor. Right. So once again, it's a it immaterial or at least insignificant. Well, Your Honor, this this ties into my second argument, which is the the application. But you have anything more to say? I'm not my first day. Well, I would just say, Your Honor, that the the the yeah, the conviction is is maybe a lesser included offense. But the finding the quantity finding for sentencing purposes is the same and results in a sentence far in excess of the increased mandatory minimum. Why? Why is that not some form of harmless error? Well, Your Honor, at trial, it mattered because if the if the jury were to not believe the cooperating witnesses or they were to scrutinize the amounts being claimed as the by the cooperating witnesses and the jury were to find that that quantity was less than 500 grams, we would have a different verdict. The verdict would be for less than 500 grams, which was in the special verdict. I understand that. OK. Thank you, Your Honor. I'll move to the second argument, which goes to the sentencing. And I started to get into this before. But the standard that was held for the sentencing was two different criteria. The first is stated on the verdict form that was given to the jury. And that differs from the guidelines, which is Section 1.1.3 relevant conduct. And the reason, Your Honor, is why this is an issue and not merely an academic exercise is because as the government cites on page 21 of its brief, they give the example of one of the where Mr. Denise wasn't even present to pick up between 113.4 to 453.59 grams of methamphetamine. There's two issues with this. The first is that this is a drug transaction where my client wasn't even present, which means that those two criteria could be applied differently in contesting that specific amount. The other problem and the problem with there not being factual specific findings in the record is did the district court apply 113.4 grams or did they apply 453.59 grams in that one piece of testimony? When the court refers back to trial testimony, it's still unclear. There's no specific factual findings for this court to review to say we understand the factual findings. I do have a question because as I understood the objection, it was sort of a preservation objection saying, oh, I better object to all of the paragraphs in the pre-sentence report regarding quantity because the Eighth Circuit makes me do that or I waive that. And that was sort of the end of it. And so the district court wasn't really given an opportunity to address any particular concerns that counsel had about whether it was the issue you're raising or double counting. How do we review that sort of circumstance that went on at the district court? Well, Your Honor, with all due respect, I think that was the district court's duty because the question of quantity at trial differs so wildly from the question of quantity at sentencing. To begin, at trial, it's really the threshold issue of the mandatory minimums. At sentencing, it's which guideline to apply. And so those are two different issues. And so the objection to quantity was consistent throughout trial and sentencing, which was Mr. Janisse objects to the testimony of these cooperating witnesses because they are incredible in determining the correct guidelines range. And again, Your Honor, the reason why this is not merely an academic exercise is because the court's attribution of 2,210 grams to Mr. Janisse took his base offense level from 16 to 32. And I'm on the 16. I'm just saying that was the actual weight methamphetamine. The court was was free to find by preponderance of the evidence using 1B1.3 what amounts it attributed to Mr. Janisse. But under the guidelines, for example, the next threshold is 1.5 kilograms. You're talking about a swing or a difference of approximately 700 grams. And in the one example from the government's brief on page 21, there's a swing or a difference right there in that one piece of testimony of over 300 grams. So I don't know if I fully answered your question, Your Honor, but my answer would be that this was the district court was on notice from the first day of trial that Mr. Janisse objected to all the amounts that were being attributed to him. And therefore, the district court had a responsibility at sentencing to apply the correct criteria 1B1.3 and to make specific factual findings that would be used to determine Mr. Janisse's base offense level. With that, Your Honors, I'll quickly move to the third issue, which is the supervised release condition. Counsel, that's controlled by our case, Robertson, right? Robertson, Your Honor, determined... You're out of time, Counsel. Oh, yes. So you can have a quick response to Judge Ben's question. Yes or no on control by Robertson? No, Your Honor. Robertson was not an overview. That's sufficient. Thank you. Mr. Kelderman? May it please the court and counsel, I'm Eric Kelderman on behalf of the United States in this appeal. I'll go directly to a few of the questions that the court asked of counsel previously. Judge Kelly, you had asked about whether the instruction that the court gave during trial actually may have been something that assisted the defense. And I submit and I believe that that's the conclusion that I've reached also. It's a situation where it was not just the court talking about all the different things that the court would do with a Rule 35 motion and in the Rule 35 process. What actually occurred was the court instructed the jury, you've been hearing about this Rule 35. You've been hearing about these reductions and here's how it works. The United States has to make a decision about whether these co-operators have provided substantial assistance. And we have to look at the level of their cooperation and its thoroughness and so on, is what the court said. And then the United States makes the motion to the court. After it had done that, that's the point where the court went into, then it's up to me. So this wasn't a situation where all discussion about how helpful these witnesses are and how helpful they're trying to be, all the different motivations that they might have for cooperating, all of those were in the instruction that the court gave in the middle of trial. These things, it occurred as I look at the transcript, it was a situation where defense counsel was asking some questions about the witnesses and their levels and how they're trying to keep the United States happy. And certainly those are fair questions. I think it just became a little confusing when defense counsel went into how happy they're trying to make the government. And then at the sidebar conference, after the court had given the instruction, of course, as the court noted, there were no objections to the instruction. But I suppose though, counsel, it could be that the additional instruction, sua sponte instruction from the district court may have confused it even more. This is a really difficult issue and it's very hard to explain to new lawyers how all of this works, much less a jury and understanding how witnesses may or may not be motivated, particularly when you're slicing it as thin as to quantity. So do you have a recommendation on what the instruction should have been or a better one would have been in this particular context? Well, your honor, the court had already given, I believe the instructions were given before the jury heard the evidence. They had already been instructed in instruction nine about cooperators and that was consistent with this court's model instructions and those that have been approved in Baldinegro and Tremucini cases cited in the United States brief. I believe that the situation developed during the trial, during the cross-examination of Harold Brewer and Samuel Rourke with, I believe it's fair to say that defense counsel maybe had a misunderstanding of what the whole process was at the rule 35, in the rule 35 process. And so some of the questions were a little confusing and the witnesses were confused and answering differently than I guess counsel had expected. And so at the sidebar conference, the conversation was had and I believe the district judge asked defense counsel, or there was a conversation about the prosecution making a specific recommendation for the amount of the cut. And I think that was really what was behind the instruction. So in your district, the government does not make any recommendation as to a percentage reduction or anything like at a rule 35, like they would at the initial sentencing on a 5k or statutory motion? Your Honor, I have been in the Western Division and the Central and Northern Divisions of this district. And that's where I've practiced. I haven't been a drug prosecutor. I've had drug cases and I've made rule 35 motions. I believe that it's fair to say that in the Western Division, the United States never makes a specific recommendation. We submit to the court a memo that tells the court about the cooperation that occurred and what the witness said and what they did and how it helped the United States. And then it's up to the court. And so when Judge Bikin made that comment during the trial about there's never a recommendation, that's consistent with what I know and what I have seen. I believe the same occurs in the Central Division, but I can speak primarily to the Western Division in front of Judge Bikin. Because it's so it's interesting if we're talking about cooperation incentives for witnesses. This is a very, this is a special category, the rule 35, right? So the cross-examination would be different if it were 5k because I think and I'm guessing in your district that the government does recommend a percentage for a 5k reduction at the time of sentencing or an amount. Your Honor, I don't believe that that's correct actually. I think we use the same process and 5k's actually in my experience and what I've seen are quite rare because the cooperation is so by the time of sentencing. Counsel, let me ask you just a very basic question. Boy, most judges would refer back to the instruction or refer ahead to the instruction or something, but some way just use the model instruction. And you know how you can use emphasis and tone of voice and everything. Why is it the way this should be done is with some version of the model instruction? That this court has approved, as you know, many times. I certainly don't disagree that that could have been done in this case. I look at the district court's instruction here and obviously defense counsel and I see it quite differently, but I see what the judge said as really quite innocuous. It didn't say a lot. It told the jury, here's the process. You're hearing about this rule 35. You're hearing about this cooperation, so let me just tell you how it works so you don't have to sit there in confusion. Certainly the district court could have given the model instruction, but here it just chose to describe the process. Okay, counsel. Now my follow-up question is, is there a case where a judge gave this sort of, I'm going to call homemade, homemade instruction as opposed to the model instruction? I don't believe that. I couldn't find one, your honor. I haven't seen anything like this. Thank you for looking. And you did raise the waiver issue, but did you cite any authority on your waiver page? I don't believe you cited any authority on your waiver. I could be wrong because I haven't looked at it in a while. Your honor, I went over my brief just yesterday and today. I don't recall. Yeah, on that page of your brief on the waiver issue, and so my question is, you don't know of a similar case, do you? I do not, your honor. Page 15 of your brief, I swear, and I think I'm right. You only cite to the record here, I think. And so do you have a similar case? I do not have a similar case as this, your honor. There are a fair number. Good. And I would say there are a fair number of waiver cases, but thank you for that. I hadn't really thought of it as a waiver case. It was just something that I had considered to be a plain error case all along, but when the court pointed that out earlier, I actually thought, well, I wish I had looked into that issue a little bit more. So I did not brief it or even do the research into the waiver portion. Oh, okay. Well, thank you very much. Then I completely misunderstood. Let me get it in front of me, so you and I end up on the same wavelength here. Yeah, yours is more of a did not object on that page. You're correct. Okay, proceed. Thank you, your honor. I was a bit alarmed when you mentioned my waiver citation because I didn't think that I... No, no, no. Proceed, proceed. As far as the levels at sentencing, this circuit has so often issued rulings saying that drug quantity determinations at sentencing are something that the court can rely on trial testimony for. I've got some cases cited in my brief, but I found another case. It is Sterling 942 after 439-442. Many defendants have appealed estimated drug quantity findings. Few have cleared the high bar of clear error review. That's because almost invariably, the district court finding was based on testimony at trial or an evidentiary sentencing hearing, usually by... But here the district court didn't even say, I find X, Y, and Z witness credible. I watched them testify and I credit that quantity to this particular defendant. So we don't even have that kind of cursory, I saw it, I believed it. I believe we do, your honor. I believe in the sentencing hearing, the district judge said, I'm referring back or I'm thinking back to the trial testimony, which I remember well. It was some comment along those lines that he well remembered the trial testimony. And so he was overruling the objection clearly based on the trial testimony. Well, and not to dance on the head of a pin, but to remember it well is not necessarily to, and therefore I believed it in some ways, you could say, I remember that very well because I thought it was outlandish or not believable. The entirety of the testimony at the trial was co-conspirators, except for the 18 grams, I guess, or 19 grams attributed to the defendant that were found on him or that he sold. The others was, the other amounts were based on the co-conspirators, the other people who testified about him. And so it seems to me that the district court was directly referring to those people by that reference. It was not a specific finding that Gladys Little Bull's testimony supported two pounds of methamphetamine, anything like that. So there was not that specific finding. But if I may, all of those errors were harmless because the base offense level, this is explained in the footnote. I believe it's, I'll find it before I finish this argument. It's a footnote that I made. The district court went down to 180 months custody. The guidelines range was 262 to 327 months based on the jury's verdict and the drug findings that the judge had made, the court had made. That would have been based on over 1,500 grams of methamphetamine. Now the testimony did support that, but what the district court did was it went straight downward to 180 months. The guidelines range, the offense levels that associated with those, with that amount, with that amount of months would have been far less. It would have been actually below what the jury found. The jury found 500 grams. They had to, to convict. The Supreme Court has instructed us twice in the last three years or so, that very, very few guidelines sentencing errors are harmless. Because, because sentencing starts with the range and if the range is wrong, it doesn't even matter. I think they said it with respect to one case in which there was a downward variance and it was still found not to be harmless by them. So I found this argument, I mean, I read it and noted it, but I thought it was, there was no case cited and it's questionable. And your honor, I was merely pointing out where the guidelines would have been and what would have been required for the ultimate sentence. So fair enough. I believe that the district court, I don't recall seeing a case where the court had to cite to each individual defendant. This court had a full trial record before it and it had the pre-sentence investigation report. I know there was an objection to it. I don't recall even seeing a single thing in any objections filed by the defense, specifically citing guideline section 1B1.3, which is the relevant conduct guideline that was discussed earlier. But here, the evidence that was cited, I've listed out a number of the witnesses in bullet points on pages 21 and 22, and the amount of methamphetamine, the amount of drugs that they attributed to the defendant. Aside from Harold Brewer and Samuel O'Rourke, there was testimony by Gladys Littlebull and Stevie Makesgood. And those two put the amount of methamphetamine at a very high level. It seems to me that's what the government would have argued and the trial court would have reviewed had the objection been properly made at sentencing. So my reaction is the waiver argument you didn't make is stronger than the harmless error argument you're now making. Your Honor, based on the briefing and the court record before the court, the United States asked this court to affirm the district court's judgment. Very good. Does Mr. Demick have any rebuttal time? If I may, very briefly, Your Honor, respond to these two things. If you're, Bob, all right, go ahead. You have a minute. Very quickly, Your Honor, the Baldenegro case was cited by the government. I think Baldenegro supports my position because in Baldenegro, this court affirmed the giving of the bottle instruction and the issue was a defense proffered instruction that was rejected. Again, coming back to the court's point, I think the appropriate instruction, if any, was the model instruction and not the homemade instruction that was given. Second of all, Your Honor, the only second point I want to make is that the trial testimony was incredibly different than sentencing. For example, if you look in the record, the government asked one of the cooperating witnesses to estimate the amount of methamphetamine that would be on a legal patent. Counsel, we've been over this. That's not true rebuttal. It's just the last word. I'm going to take the case as well argued and briefed and now under submission. I know, Mr. Demick, the court appreciates your service under the Criminal Justice Act. Very well, Your Honor. Thank you.